UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
JOSEPH CLARK,

                                    Plaintiff,

          - against -                                          **OPINION AND ORDER**

                                                                 No. 12-CV-8061 (CS)
STACY KITT, individually and as an employee of the State of
New York,

                                    Defendant.
----------------------------------------------------------------------x

<u>Appearances</u>:
Maureen McNamara
Law Office of Maureen McNamara
West Haverstraw, New York
*Counsel for Plaintiff*

Monica Connell
Joanna R. Cohen
New York State Attorney General's Office
New York, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

          Before the Court is Defendant Stacy Kitt's Motion to Dismiss.  (Doc. 12).  For the

reasons set forth below, Defendant's Motion is GRANTED.

## I.  **BACKGROUND**

### A.  **New York's Disability and Retirement Scheme for Police Officers**

          Before describing the facts of the instant case, it is necessary to provide a brief overview

of New York's system for awarding disability and retirement benefits to police officers who are

injured in the line of duty.

Section 207-c of New York's General Municipal Law requires a municipality to continue to pay full salary and benefits to any police officer who becomes temporarily disabled due to an injury incurred in the line of duty.  *See* N.Y. Gen. Mun. Law § 207-c(1).  Such benefits cease, however, if the officer's employment is terminated through a "retirement for disability incurred in performance of duty" pursuant to section 363-c of the Retirement and Social Security Law. *Id.* § 207-c(2).  An officer who retires for permanent disability is entitled to retirement benefits under section 363-c, but those benefits are generally smaller than disability benefits under section 207-c.  Applications for disability-based retirements are processed by the New York State and Local Employees' Retirement System (the "Retirement System"), which administers pension and retirement plans for certain state and local employees, including police officers in municipalities that do not provide their own independent pension plans.  *See* N.Y. Retire. & Soc. Sec. Law §§ 10, 330.  The New York State Comptroller is the statutory head of the Retirement System, *id.* § 11, and is the final decision-maker on applications for retirement disability, *id* § 363-c(d).  While municipalities are responsible for paying disability benefits under section 207-c, it is the Retirement System that pays retirement benefits under section 363-c once an officer is granted a permanent disability retirement.

Under the governing statute, the head of a local police department can file an application with the Retirement System to terminate an officer's employment through an involuntary retirement for disability under section 363-c.  *See id.* § 363-c(c)(2).  It is the applicant's burden to show that the officer in question has been "permanently incapacitated from performing his job duties," and the State Comptroller "is vested with the authority to weigh conflicting medical evidence" in making this determination.  *Matter of Eddie v. DiNapoli*, 898 N.Y.S.2d 724, 725-26 (App. Div. 2010) (internal quotation marks omitted); *see* N.Y. Retire. & Soc. Sec. Law

§ 363-c(d).  An officer unhappy with the initial decision on the application can request an administrative hearing and redetermination before a Retirement System Hearing Officer, in which the Retirement System is a party represented by counsel.  The Hearing Officer issues findings and conclusions, but the State Comptroller has the ultimate authority to accept or reject those findings in making the final decision on the application.  *See, e.g.*, *id.* at 725 ("Following an administrative hearing, a Hearing Officer determined . . . that petitioner was not permanently incapacitated . . . . [The Comptroller] accepted the Hearing Officer's findings, and petitioner commenced this CPLR article 78 proceeding seeking review of [the Comptroller]'s determination.")

**B.  <u>Factual Background</u>**

For purposes of the instant Motion to Dismiss, I accept as true the facts, but not the conclusions, as set forth in the Amended Complaint ("AC").  (Doc. 26.)

Plaintiff Joseph Clark is a former police officer for the Town of Clarkstown, New York, (AC ¶¶ 1, 14, 16), and as such is a member of the Retirement System, (*id.* ¶¶ 2).  At some point prior to 1989, Plaintiff sustained injuries in the course of his duties as a police officer, and in March of that year, the Clarkstown Police Department began paying disability benefits to Plaintiff under section 207-c.  (*Id.* ¶ 14.)  Although the Complaint is not clear on this point, it appears that at some point prior to 1993, the Clarkstown Chief of Police filed an application with the Retirement System seeking Plaintiff's involuntary retirement for disability under section 363-c.  (*Id.* ¶ 25.)  That application, however, was apparently based on medical records submitted to the Retirement System that the Clarkstown Chief of Police had obtained without Plaintiff's consent.  (*Id.*)  Plaintiff sued in state court and in 1993 obtained an injunction against the Town of Clarkstown and its Chief of Police, which required them to withdraw the submitted medical

records from consideration before the Retirement System and permanently enjoined them from submitting any medical records to the Retirement System that had been obtained without Plaintiff's consent.  (*Id.*)  The Complaint does not specify how this first application was resolved, but based on subsequent events described in the Complaint, it apparently did not result in Plaintiff's retirement.

In 1995, the Clarkstown Chief of Police filed another application with the Retirement System, again seeking Plaintiff's involuntary retirement for disability under section 363-c.  (*Id.* ¶ 15.)  The State Comptroller granted the application in February 1999, and the Clarkstown Police Department thereafter terminated Plaintiff's section 207-c disability benefits.  (*Id.* ¶ 16.) Plaintiff opposed the application and requested a hearing and redetermination, arguing that there was insufficient medical evidence before the State Comptroller to justify his decision.  (*Id.* ¶¶ 17-18.)

In September 1999, the Retirement System started the hearing process on Plaintiff's request for redetermination.  (*Id.* ¶ 19.)  A preliminary hearing was held on September 10, 1999, to discuss various procedural issues.  (*Id.* ¶ 20.)  The Complaint alleges that at the time, the Retirement System routinely gave any member participating in a disability retirement hearing two options for how to proceed as to medical evidence at the hearing:  the medical evidence could consist solely of those medical records that were before the State Comptroller when he made the initial determination on the application, or the member could offer the testimony of an expert medical witness.  (*See id.* ¶¶ 24, 41-43, 45-46, 48.)  Over the next several years, Plaintiff repeatedly requested that the Retirement System disclose what medical records had been examined when the initial decision was made, but no records were ever produced – even in

response to a demand under New York's Freedom of Information Law.  (*Id.* ¶¶ 23, 25, 28, 45-49.)

The next event described in the Complaint is the November 2007 scheduling of a hearing to determine whether Plaintiff's challenge to the State Comptroller's decision should be dismissed for failure to prosecute.  (*Id.* ¶¶ 26-27.)  The Complaint contains no explanation for this eight-year delay and provides no recounting of the events that occurred during this period.[1] By the time of the 2007 hearing, Defendant Stacy Kitt was the assigned attorney to represent the Retirement System.  At the hearing, Defendant allegedly admitted that the Retirement System did not know on what medical records the Retirement System had relied in reaching the initial 1999 determination.  (*Id.* ¶ 28.)  Ultimately, the Hearing Officer decided that Plaintiff's challenge would not be dismissed.  (*Id.* ¶ 27.)  When Plaintiff sought to schedule a hearing on the merits, the Hearing Officer stated that he was only assigned to address the dismissal issue and was not authorized to act on the merits.  (*Id.*)  Plaintiff then sought consent from the Retirement System to have that specific Hearing Officer also handle the merits, but Defendant refused to consent on behalf of the Retirement System.  (*Id.*)

Thereafter, no further developments occurred in the case, and in 2009 Plaintiff filed a federal lawsuit in the Northern District of New York ("*Clark I*").  (*See id.* ¶ 29; *Clark I* Doc. 1 (Complaint filed Sept. 11, 2009).)[2]  That lawsuit alleged, among other things, that:  (a) Plaintiff's right to due process of law under the Fourteenth Amendment to the Constitution was violated when the Retirement System granted the initial 1999 application for disability retirement without

---

[1] The events between 1999 and 2007 are described in an earlier complaint Plaintiff filed in the Northern District of New York, as discussed below.  *See Clark v. DiNapoli*, No. 09-CV-1037 (N.D.N.Y. filed Sept. 11, 2009) ("*Clark I*").  But I need not consider those events to dispose of the instant Motion, because the Amended Complaint in this case contains no allegations of Defendant's personal involvement during that time.

[2] The Court takes judicial notice of the *Clark I* litigation as discussed in Part III.D below.

adequate supporting medical evidence; and (b) that Plaintiff was suffering an ongoing violation of his due process rights because the Retirement System was refusing to grant him a post-deprivation hearing on the merits more than ten years after its initial decision.  (*See, e.g.*, *Clark I* Doc. 1 ¶¶ 5-7.)

In response to Plaintiff's initiation of the *Clark I* lawsuit, the Retirement System finally scheduled a hearing on the merits of Plaintiff's challenge, to take place on November 6, 2009 in Newburgh, New York.  (AC ¶ 36.)  From this point, the Amended Complaint includes a host of allegations of deliberate misconduct by Defendant in connection with the merits hearing.[3] Plaintiff believes that Defendant scheduled the hearing for that date because she knew Plaintiff's counsel would be unavailable that day, in a deliberate attempt to force Plaintiff to be unrepresented at the hearing.  (*Id.*)  After requesting an adjournment of the hearing, Plaintiff received a letter on November 3, 2009 from Debra Sullivan, an administrator in the Retirement System's Hearing Administration Unit, in which the request for an adjournment was denied (the "Sullivan Letter").  (*Id.* ¶¶ 37-38.)  That letter also attempted to justify why the hearing was being held in Newburgh (a location inconvenient for Plaintiff) rather than in Rockland County (which Plaintiff had requested), despite the Retirement System's alleged regular practice of holding hearings at a convenient location of the member's choice, including at locations in Rockland.  (*Id.* ¶ 39.)  Further, the letter stated that Plaintiff's hearing would be based solely on

---

[3] The Amended Complaint does not contain any facts suggesting why Defendant might have been motivated to undertake the alleged vendetta against Plaintiff.  The Amended Complaint does allege that Plaintiff was an officer of the Rockland County Patrolman's Benevolent Association ("PBA") from 1985 until 1999, and that that entity actively asserted its members' rights, including by suing the Retirement System, under Plaintiff's supervision.  (*See* AC ¶¶ 10-12.)  Plaintiff does not, however, bring a First Amendment retaliation claim – understandably so, because such a claim would plainly fail in the absence of any facts suggesting Defendant even knew of Plaintiff's union activities, let alone that those activities in 1999 and before had any conceivable connection to Defendant's conduct in 2007 and later.  *See, e.g.*, *Ramirez v. Hempstead Union Free Sch. Dist. Bd. of Educ.*, No. 13-CV-6429, 2014 WL 3547374, at *11 (E.D.N.Y. July 16, 2014) (for temporal proximity to support claim of retaliation, time between defendant's knowledge of protected activity and adverse action against plaintiff must be very close); *see also Fotopolous v. Bd. of Fire Comm'rs*, No. 11-CV-5532, 2014 WL 1315241, at *16 (E.D.N.Y. Mar. 31, 2014) (one year span between protected activity and adverse action too long to support inference of retaliation).

the medical records, which would prevent Plaintiff from offering a medical expert, despite the Retirement System's rule allowing the member to choose which method of presenting medical evidence to use.  (*Id.* ¶ 41.)  The Complaint alleges that – unknown to Plaintiff at the time – the Sullivan Letter had in fact been secretly drafted by Defendant for Ms. Sullivan's signature, again with the intent of interfering with Plaintiff's ability to contest his involuntary retirement.  (*Id.* ¶¶ 37-38, 42-45.)

Plaintiff attended the November 6, 2009 hearing without counsel, and requested an adjournment from the Hearing Officer.  (*Id.* ¶ 40.)  Defendant explained to the Hearing Officer that Plaintiff's previous adjournment request had been denied (in the Sullivan Letter) because Plaintiff had used up the two adjournment requests each member is allowed, but the Amended Complaint alleges that Defendant was unable to substantiate that claim and deliberately misled the Hearing Officer by failing to disclose that the Retirement System had itself obtained at least four previous adjournments.  (*Id.*)  Despite Defendant's position, the Hearing Officer granted Plaintiff's request and adjourned the hearing.  (*See id.* ¶¶ 55, 58.)

The Complaint alleges that at some point prior to the adjourned hearing, Defendant sent a lengthy email to Jack Economou, the Hearing Officer who had been designated to conduct the hearing.  (*Id.* ¶ 60.)  At that time, Plaintiff had not yet been notified that Mr. Economou had been designated as the presiding Hearing Officer.  (*Id.*)  Defendant's email "contain[ed] her own version of unsupported, unsworn facts, including trying to justify, without any evidentiary support, the extreme delays by the Retirement System."  (*Id.*)  The Amended Complaint alleges that the email included deliberate factual misstatements in an attempt to prejudice the Hearing Officer against Plaintiff.  (*Id.* ¶¶ 60-61.)  Then, on December 3, 2009, an attorney for the Clarkstown Police Department transmitted to Defendant a series of medical reports obtained

from the Workers' Compensation Board without Plaintiff's authorization, in violation of the state court's 1993 permanent injunction described above. (*Id.* ¶ 51.) The Complaint alleges that Defendant wrongfully retained those medical records and failed to notify Plaintiff that she had received them. (*Id.*)

The hearing on the merits of Plaintiff's opposition to his involuntary retirement was ultimately held on December 15, 2009 before Mr. Economou (the "2009 Hearing"), (*id.* ¶ 58), and Defendant again represented the Retirement System, (*see id.* ¶ 66). The Complaint alleges that based on Retirement System rules and practice, the Hearing Officer was supposed to conduct a *de novo* review of the evidence, and the burden of proof was supposed to be on the applicant for the retirement (here, the Clarkstown Chief of Police). (*Id.* ¶¶ 52-56.) Nevertheless, Defendant is alleged to have deliberately misled the Hearing Officer by arguing that the burden of proof was on Plaintiff, and that it was not a *de novo* hearing. (*Id.* ¶¶ 65-68.) After oral argument on this issue, the Hearing Officer and Defendant allegedly left the hearing room for ten to fifteen minutes, during which time Plaintiff surmises they engaged in *ex parte* communications. (*Id.* ¶ 66.) Upon returning to the hearing room, and allegedly as a result of having been influenced by Defendant's various misstatements and wrongful *ex parte* communications, the Hearing Officer issued a ruling that allegedly violated the New York State Administrative Procedure Act and the Retirement System's own rules and regulations. (*Id.* ¶¶ 61, 67.) Although the Amended Complaint does not specify the Hearing Officer's exact ruling, it does assert that Defendant's conduct led to Plaintiff's request for a redetermination being dismissed. (*Id.* ¶ 46.)

Meanwhile, the *Clark I* lawsuit in the Northern District of New York was proceeding. On August 9, 2010, after the 2009 Hearing had been conducted, Plaintiff filed a Proposed

Amended Complaint alleging violations of Plaintiff's rights to due process and equal protection. (*Clark I* Doc. 30.)[4]  That Proposed Amended Complaint (technically a supplemental complaint because it added allegations regarding conduct that post-dated the filing of the original complaint) included a new section of allegations regarding the 2009 Hearing.  (*See id.* ¶¶ 190-213; *see also Clark I* Final Amended Complaint, (*Clark I* Doc. 86), ¶¶ 154-175.)  Among other things, that Amended Complaint contained many of the same allegations as those asserted in the instant lawsuit regarding deliberate misconduct by Ms. Kitt.  Although Ms. Kitt was not named as a defendant in *Clark I*, several other attorneys for the Retirement System were named as defendants and were alleged to have engaged in similar misconduct.  (*See Clark I* Doc. 30 throughout.)

The *Clark I* defendants thereafter filed a Motion to Dismiss, and in October 2011 the Court granted the Motion and dismissed the relevant portions of the Amended Complaint.  *See Clark v. DiNapoli*, No. 09-CV-1037, 2011 WL 4901330 (N.D.N.Y. Oct. 14, 2011).  The Court held, in relevant part, that:  (1) Plaintiff's claims for money damages against the Retirement System or the individual defendants in their official capacities were barred by the Eleventh Amendment, *see id.* at *5; (2) Plaintiff failed to state a "class of one" equal protection claim because the Amended Complaint did not describe any similarly situated persons, *see id.* at *7-8; and (3) Plaintiff's failure to utilize New York's judicial review procedures under C.P.L.R. Article 78 barred his due process claims, including both his pre-deprivation claim as to the Retirement System's initial determination and his post-deprivation claim regarding delay in affording him a hearing, *see id.* at *8-11.  Plaintiff appealed, and on January 31, 2013, the Second Circuit affirmed the District Court's judgment.  *See Clark v. DiNapoli*, 510 F. App'x 49

---

[4] Although Plaintiff filed this Proposed Amended Complaint on August 9, 2010, (*Clark I* Doc. 30), the final Amended Complaint was not formally filed until a year later on August 3, 2011, (*Clark I* Doc. 86).

(2d Cir. 2013) (summary order).  As to the money damages issue and Plaintiff's equal protection and pre-deprivation due process claims, the Court of Appeals affirmed for the reasons stated by the District Court.  *Id.* at 51.  As to Plaintiff's post-deprivation due process claim regarding the delay in affording him a hearing, however, the Court affirmed on different grounds, namely, that the claim (which sought injunctive relief) was barred by the Eleventh Amendment and did not fall within the exception established in *Ex parte Young*, 209 U.S. 123 (1908).  *Id.*

Plaintiff filed the instant lawsuit on November 5, 2012, while his appeal before the Second Circuit in *Clark I* was still pending.  (*See* Doc. 1.)  At Defendant's request, a pre-motion conference was held on May 17, 2013, regarding a contemplated motion to dismiss the Complaint.  (*See* Minute Entry dated May 17, 2013.)  Following the discussion at that conference, Plaintiff submitted an Amended Complaint, (Doc. 26), which asserts two claims, both pursuant to 42 U.S.C. § 1983 and arising under the Fourteenth Amendment to the United States Constitution:  one for violation of Plaintiff's right to equal protection, and one for violation of Plaintiff's right to due process.[5]  (*See* AC ¶¶ 77-83.)  The Complaint seeks compensatory damages, punitive damages, injunctive relief, and attorney's fees, as well as a declaratory judgment that Plaintiff is entitled to (a) annulment of the Retirement System's

---

[5] Although the only two causes of action in the Amended Complaint both rely only on the Fifth and Fourteenth Amendments to the federal Constitution, the Statement of Jurisdiction at the start of the Amended Complaint states that "Plaintiff maintains this action for violations of the Equal Protection and Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983; the due process clause set forth in Article 1 of the Constitution of the State of New York; and the Retirement and Social [Security] Law of the State of New York, and the State Comptroller's Rules and Regulations."  (AC ¶ 7.)  The Amended Complaint further states that "Supplemental jurisdiction exists by virtue of 28 U.S.C. § 1367, regarding New York remedies under the New York State Bill of Rights and New York State statutes, including the General Municipal Law, the Retirement and Social Security Law and the common law."  (*Id.* ¶ 9.)  Nevertheless, the Amended Complaint asserts no state law causes of action, whether arising under the New York State Constitution, any New York statute, or the New York common law.  A generalized invocation of New York law in the jurisdictional section of the Amended Complaint is not sufficient to assert specific causes of action under New York law.  As I read the Complaint, both claims are asserted under the federal Constitution pursuant to Section 1983.  I therefore need not reach Defendant's arguments regarding any state law claims Plaintiff may be asserting.  Further, to the extent Plaintiff may be asserting state law claims, I would decline to exercise supplemental jurisdiction in light of my dismissal of the federal claims.  *See* 28 U.S.C. § 1367(c)(3); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).

decision to grant an involuntary retirement; and (b) reinstatement as a police officer for the Clarkstown Police Department.  (*See id.* wherefore clause.)  The instant Motion to Dismiss followed.  (Doc. 12.)

## II.  <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

## III.  <u>DOCUMENTS TO CONSIDER</u>

Both sides have submitted several documents for the Court's consideration in connection with the instant Motion, including affidavits, deposition transcripts, and other evidentiary materials.  (*See* Connell Decl. Exs. 2-5; McNamara Decl. throughout; *id.* Exs. A-F.)[6]

### A.  <u>Legal Standard</u>

When deciding a motion to dismiss, the Court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  Thus, "[w]hen matters outside the pleadings are presented [in support of or] in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment . . . and afford all parties the opportunity to present supporting material."  *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (alteration and internal quotation marks omitted).  Under certain circumstances, however, it is appropriate for a court to consider documents outside of the pleadings on a motion to dismiss.  *See Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011).  For example, a court may consider a document upon the terms and effect of which the complaint relies heavily – that is, an "integral" document – without converting a motion to dismiss into a summary judgment motion, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), provided it is "clear on the record that no dispute exists regarding

---

[6] "Connell Decl." refers to Declaration of Monica Connell in Support of Motion to Dismiss.  (Docs. 13-14.)
"McNamara Decl." refers to Declaration of Maureen McNamara in Opposition to Motion to Dismiss.  (Doc. 21.)

the authenticity or accuracy of the document," *Faulkner*, 463 F.3d at 134. A court may also

consider any "matters of which judicial notice may be taken," *Chambers*, 282 F.3d at 153

(internal quotation marks omitted), such as litigation documents filed in other courts, "not for the

truth of the matters asserted in the other litigation, but rather to establish the fact of such

litigation and related filings," *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)

(citation omitted).

### B. <u>McNamara Declaration</u>

As an initial matter, Plaintiff's counsel has submitted a twenty-seven page declaration

purportedly on personal knowledge. (*See* McNamara Decl.; *id.* at page 26.) The declaration

consists almost entirely of factual assertions that cannot be considered on a motion to dismiss,

(*see, e.g.*, *id.* ¶ 15 ("In 1997, a client of mine . . . told me that he had called the New York State

Retirement System to find out why he had not yet received a Determination after his disability

retirement hearing. The hearing officer . . . was Jack Economo [*sic*] (the same hearing officer

who presided at this Plaintiff's hearings in 2009). . ."), and additional legal argument beyond that

contained in Plaintiff's Memorandum of Law, (*see, e.g.*, *id.* ¶ 14 ("As explained in this

Declaration, Defendant Stacy Kitt is not entitled to qualified immunity . . . . At the time

Defendant Kitt interfered with Plaintiff's right to a fair and impartial proceedings, [*sic*] she

knowingly and intentionally violated Plaintiff's clearly established rights."). Ms. McNamara's

declaration is improper; declarations of counsel are generally properly used only to describe the

documents attached to them as exhibits for the Court's consideration, (*see, e.g.*, Connell Decl.),

not to advance factual averments or legal arguments. *See H.B. v. Monroe Woodbury Cent. Sch.

Dist.*, No. 11-CV-5881, 2012 WL 4477552, at *5 (S.D.N.Y. Sept. 27, 2012). To the extent the

declaration makes factual assertions beyond those of which I can independently take judicial

notice as described below, I cannot consider it in connection with the instant Motion to Dismiss. *See Friedl*, 210 F.3d at 83-84.  To the extent it contains legal argument, I will not allow counsel to bypass the page limits on memoranda of law by submitting additional argument in the form of a sworn declaration.  Accordingly, I decline to consider Ms. McNamara's declaration in its entirety.

### C.  Other Documents

There are also several documents attached to Ms. McNamara's declaration.  (*See* McNamara Decl. Exs. A-G.)  Exhibit A is a May 8, 2000 letter from a Retirement System official regarding separation of functions between Hearing Officers and counsel for the Retirement System that is mentioned in the Amended Complaint, (*see* AC ¶ 32), and Exhibit B is the November 3, 2009 Sullivan Letter which the Amended Complaint alleges was in fact drafted by Defendant, (*see id.* ¶¶ 38-39, 41-42, 44).  I may consider both of these documents, but because they serve only as evidence supporting the factual allegations in the Complaint, which for purposes of the instant Motion I must already assume to be true, consideration of these materials does not affect the outcome.  Exhibit C is an excerpt from the deposition of Debra Sullivan that was taken in *Clark I*, of which I may take judicial notice – not for the truth of the matters asserted therein, but for the fact that the statements were made, as discussed below.  *See Johnson v. Levy*, 812 F. Supp. 2d 167, 177 (E.D.N.Y. 2011).  Exhibits D, E, F, and G are emails among individuals at the Retirement System, including Defendant, that were turned over to Plaintiff in discovery in *Clark I*.  These materials are outside the scope of what can be considered on a motion to dismiss, and they merely provide evidentiary support for factual allegations in the Complaint that I am already assuming to be true in connection with the instant Motion.  In any

event, even if I were to consider all the exhibits to the McNamara Declaration, it would not affect my ruling on the Motion.

Defendant's counsel has also submitted several documents for the Court's consideration. (*See* Connell Decl. Exs. 2-5.)  Exhibit 2 to the Connell Declaration is the brief submitted to the Second Circuit by the defendants-appellees in *Clark I*, and Exhibits 4 and 5 are the original Complaint and final Amended Complaint filed in the Northern District of New York in that case. As discussed below, the Court can take judicial notice of these litigation documents – not for the truth of any factual assertions contained therein, but to establish the existence of the prior litigation, what claims were asserted, and what issues were argued and decided.  Exhibit 3 is the transcript of the December 15, 2009 hearing in the underlying administrative proceeding, which hearing is obviously extensively referenced in the Amended Complaint.  I will consider the transcript only for the fact of what was said, to the limited extent that is relevant, and not to address the factual merit of the allegations contained in the Amended Complaint – an exercise in which the Court does not engage on a motion to dismiss.

### D.  <u>Judicial Notice:  *Clark I*</u>

The Court will, however, take judicial notice of the prior *Clark I* lawsuit filed in the Northern District of New York.  The defense of *res judicata* is a proper subject for a motion to dismiss pursuant to Rule 12(b)(6), and "in considering a *res judicata* defense, a court may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the Court."  *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005) (citing *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72-73 (2d Cir. 2003)).  I therefore take judicial notice of the proceedings in *Clark I*, "not for the truth of the matters asserted in the other

litigation, but rather to establish the fact of such litigation and related filings." *Kramer*, 937 F.2d at 774 (citation omitted).  Of primary relevance, I have examined:  the original *Clark I* Complaint, (*Clark I* Doc. 1 (filed Sept. 11, 2009)); the Proposed Amended Complaint in *Clark I* in which Plaintiff first adds allegations regarding the 2009 Hearing (*Clark I* Doc. 30 (filed Aug. 9, 2010)); the final *Clark I* Amended Complaint, (*Clark I* Doc. 86 (filed Aug. 3, 2011)); the Decision and Order of the District Court dismissing the relevant portions of that final Amended Complaint, *Clark v. DiNapoli*, No. 09-CV-1037, 2011 WL 4901330 (N.D.N.Y. Oct. 14, 2011); and the Summary Order issued by the Court of Appeals affirming the District Court's judgment, *Clark v. DiNapoli*, 510 F. App'x 49 (2d Cir. 2013) (summary order).[7]

## IV.   **DISCUSSION**

In support of her Motion to Dismiss, Defendant argues (among other things) that:  (1) much of the relief Plaintiff seeks is barred by the Eleventh Amendment or cannot be obtained from this Defendant;[8] (2) the action is barred in its entirety by the doctrine of *res judicata*; and (3) in any event, for substantially the reasons stated by the District Court and affirmed by the Second Circuit in *Clark I*, the Amended Complaint fails to state a due process or equal protection

---

[7] Both the original Complaint and the final Amended Complaint in *Clark I* have been docketed in this case as exhibits to Ms. Connell's declaration.  (*See* Connell Decl. Exs. 4-5.)

[8] Defendant raises this Eleventh Amendment/*Ex parte Young* issue for the first time in her reply papers.  (*See* Defendant's Reply Memorandum of Law in Further Support of the Motion to Dismiss the Amended Complaint, (Doc. 24), 8-9.)  Ordinarily, I would decline to consider an argument raised for the first time in a reply brief.  *See ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007).  Here, however, as the Second Circuit noted in *Clark I*, courts "can address an Eleventh Amendment defense in the first instance because it sufficiently partakes of the nature of a jurisdictional bar," 510 F. App'x at 49 (internal quotation marks omitted), and I will therefore consider the issue in my discretion – particularly because, as Defendant points out, Plaintiff's opposition papers further muddle the question of what remedies Plaintiff is seeking against Defendant in her official and individual capacities.

claim.  (*See, e.g.*, D's Mem. 8-14.)[9]  After reviewing the parties' submissions, I conclude that the Amended Complaint is fatally flawed in a number of ways and must be dismissed.[10]

**A.  The Eleventh Amendment, *Ex parte Young*, and Available Remedies**

On its face, the Amended Complaint purports to sue Defendant in both her official and personal capacities.  (*See* AC caption (naming "Stacy Kitt, individually and as an employee of the State of New York"); *id.* ¶¶ 4-5 ("Stacy Kitt, acting under the color of State law, while employed in the Office of the State Comptroller, repeatedly acted . . . to deprive Plaintiff of his . . . rights . . . . Defendant Stacy Kitt is *also* sued herein in her individual capacity . . . .") (emphasis added).)  The "Wherefore" clause of the Complaint seeks compensatory damages, punitive damages, injunctive relief, and attorney's fees, but it does not differentiate which remedies are being sought from Defendant in her individual capacity, and which are being sought in her official capacity as a Retirement System attorney.  (*See id.* at 25-26.)

1.  Damages

Money damages are available from Defendant only in her individual capacity.  "To the extent that a state official is sued for damages in [her] official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."  *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993) (citing *Hafer v. Melo*, 502 U.S. 21, 25-26 (1991), and *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985).  Plaintiff specifically disavows that he is seeking any damages that would be payable by the Retirement System or the State of New York, and asserts that he is seeking damages from Defendant only in her individual capacity – the lack of clarity in the Amended

---

[9] "D's Mem." refers to Defendant's Memorandum of Law in Support of the Motion to Dismiss the Amended Complaint.  (Doc. 15.)

[10] In light of my rulings on other issues, I need not address Defendant's arguments regarding the statute of limitations, collateral estoppel, and qualified immunity.

Complaint on this point notwithstanding.  (*See* P's Opp. 3.)[11]  In any event, both causes of action

in the Amended Complaint are asserted under Section 1983, which statute does not provide for

money damages against a state officer in her official capacity.  *See Will v. Mich. Dep't of State

Police*, 491 U.S. 58, 71 (1989).  Accordingly, to whatever extent the Amended Complaint can be

read as seeking damages from Defendant in her official capacity, those claims are dismissed.

    2.  Injunctive and Declaratory Relief

    Additionally, Plaintiff seeks a judgment "declaring that Plaintiff is entitled to have the

February 1999 determination of the New York State Comptroller annulled and thus Plaintiff is

entitled to be reinstated to his position as a Clarkstown police officer . . . " or in the alternative,

awarding the liquidated value of such relief.  (AC "Wherefore" clause, ¶ B.)

    Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may sue a state

official acting in [her] official capacity – notwithstanding the Eleventh Amendment – for

'prospective injunctive relief' from violations of federal law."  *In re Deposit Ins. Agency*, 482

F.3d 612, 617 (2d Cir. 2007).  Retroactive relief, even if styled as equitable in nature, is barred

by the Eleventh Amendment.  *See Edelman v. Jordan*, 415 U.S. 651, 665-68 (1974).  Under the

*Ex parte Young* exception, "[a] plaintiff may avoid the Eleventh Amendment bar to suit and

proceed against individual state officers, as opposed to the state, in their official capacities,

provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief

properly characterized as prospective."  *In re Deposit Ins. Agency*, 482 F.3d at 618 (internal

quotation marks omitted).  Although the exception may not be used to adjudicate the legality of

past conduct, *see Papasan v. Allain*, 478 U.S. 265, 277-78 (1986), "[a] violation is deemed

ongoing when its detrimental impact continues into the present," *Marino v. City Univ. of N.Y.*,

---

[11] "P's Opp." refers to Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss.  (Doc. 20.)

No. 11-CV-3640, 2014 WL 1874855, at *8 (E.D.N.Y. May 9, 2014).  Injunctive relief ordering reinstatement to a position from which a plaintiff was illegally terminated is properly characterized as prospective for purposes of the *Ex parte Young* analysis.  *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007) ("Every Circuit to have considered the issue, including our own, has held that claims for reinstatement to previous employment satisfy the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar.") (collecting cases).

In the prior *Clark I* lawsuit, the Second Circuit observed that Plaintiff's claim of injury stemming from allegedly ongoing post-deprivation delay in affording him a hearing fell outside the *Ex parte Young* exception, because Plaintiff did in fact receive such a hearing on December 15, 2009.  *Clark I*, 510 F. App'x at 51.  Once the hearing was held, any relief premised on delay – whether styled as monetary or injunctive – would necessarily be only to compensate for past misconduct, and not to remedy an ongoing violation of federal law, thereby falling outside the *Ex parte Young* exception.  *Id.*  Although that analysis is equally applicable in the instant case for any remedy sought on the basis of delay, the Amended Complaint here also includes allegations that Defendant tainted the 2009 Hearing itself through improper *ex parte* contact with, and deliberately misleading statements to, the Hearing Officer.  Therefore, to the extent the Amended Complaint seeks injunctive relief on the basis of delay in affording Plaintiff the 2009 Hearing, those claims are dismissed as barred by the Eleventh Amendment.  To the extent the Amended Complaint seeks reinstatement due to the allegedly unconstitutional nature of the 2009 Hearing, however, those claims fall within the *Ex parte Young* exception and do not run afoul of state sovereign immunity.

Nevertheless, vacatur of the Retirement System's decision and reinstatement as a Clarkstown police officer are not available remedies in this case.  Even construed most favorably to Plaintiff, the facts as alleged in the Amended Complaint do not demonstrate that this Defendant – a staff attorney in the Retirement System's counsel's office – has the authority or the ability to effectuate vacatur and reinstatement even if such an order were to issue, and neither the State Comptroller (the final decisionmaker on disability retirements) nor the Clarkstown Police Department (the applicant for Plaintiff's disability retirement) are parties to the instant lawsuit.  *See Shipman v. N.Y. State Office of Pers. with Developmental Disabilities*, No. 11-CV-2780, 2012 WL 1034903, at *3 (S.D.N.Y. Mar. 26, 2012) ("[P]laintiff cannot proceed on his request for reinstatement because he has failed to allege that any individual defendant has the authority to reinstate plaintiff."); *Perciballi v. New York*, No. 09-CV-6933, 2010 WL 3958731, at *4 (S.D.N.Y. Sept. 28, 2010) (in *Ex parte Young* context, where a plaintiff "fails to allege that any Individual Defendant has the authority to reinstate him," a "claim for injunctive relief against the Individual Defendants cannot proceed").  Accordingly, Plaintiff's claims for injunctive relief are dismissed.  The only relief available in this case is an award of damages against the Defendant in her individual capacity.

## B.  *Res Judicata*

"[T]he doctrine of *res judicata*, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action."  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (internal quotation marks and alteration omitted).  Federal preclusion law governs the effect of a prior federal judgment in a subsequent federal lawsuit.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).  For a prior suit to have preclusive effect in a later one,

"the second suit [must] involve[] the same 'claim' – or 'nucleus of operative fact' – as the first suit."  *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (internal quotation marks omitted).  To determine whether two suits stem from a common nucleus of operative fact, federal courts "look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations."  *Id.* (internal quotation marks and alteration omitted).  Furthermore, "the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion."  *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367-68 (2d Cir.1995); *accord Malcolm v. Bd. of Educ.*, 506 F. App'x 65, 68 (2d Cir. 2012) (summary order); *see Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003) ("*Res judicata* operates to preclude claims, rather than particular configurations of parties; Plaintiff's addition of new defendants, in the context of allegations of their involvement in the series of alleged deprivations, does not entitle him to revive the previously-dismissed claims.")

Plaintiff's due process claim can be divided into two main allegations:  (1) the unreasonable delay in affording Plaintiff a hearing violated Plaintiff's rights; and (2) the procedures used at the 2009 Hearing, including Defendant's alleged *ex parte* communications, violated Plaintiff's rights.[12]  In *Clark I*, Plaintiff brought due process and equal protection claims – the same claims asserted in the instant litigation – against the Retirement System and several

---

[12] The Complaint could arguably be read as alleging a third constitutional violation:  that the 1999 initial determination of the State Comptroller to grant the application for disability retirement was itself a violation of due process because it was not based on medical evidence.  But because the Amended Complaint does not allege Defendant's personal involvement in that decision (Defendant does not appear in the chronology of events until 2007), those allegations are not a proper issue in the current suit against Defendant.  In any event, Plaintiff has previously litigated that issue and is barred by *res judicata* from revisiting it as described herein.

attorneys in the Retirement System's counsel's office, among other defendants.  (*See Clark I* Doc. 86.)  Plaintiff alleged that the administrative proceedings before the Retirement System were flawed in several respects, including allegations that Defendant in this case, Stacy Kitt, misled the Hearing Officer and had improper *ex parte* communication with the Hearing Officer in connection with the 2009 Hearing.  Although the initial *Clark I* Complaint was filed prior to the 2009 Hearing, Plaintiff later filed an Amended Complaint adding allegations in connection with that hearing.  Ms. Kitt's conduct was discussed at length in the *Clark I* Amended Complaint, (*see Clark I* Proposed Amended Complaint, (*Clark I* Doc. 30), ¶¶ 190-213; *Clark I* Final Amended Complaint, (*Clark I* Doc. 86), ¶¶ 154-175), but Plaintiff chose not to name Ms. Kitt as a defendant in that case.

      Plaintiff's first attempt at recovering for the alleged violations of his rights by the Retirement Board and its employees was unsuccessful; he cannot now revive those claims by blaming a different individual in the same office in connection with the same set of hearings and decisions.  The claims in this case stem from the same "nucleus of operative fact" as the claims in *Clark I*, and Defendant here has a sufficiently close relationship to the *Clark I* defendants – her employer and co-workers – to justify preclusion.  *See Barclay v. Lowe*, 131 F. App'x 778, 779 (2d Cir. 2005) (summary order) (holding that co-worker prison guards at same facility were in privity for *res judicata* purposes); *Watson v. Mayo*, No. 07-CV-54, 2008 WL 538442, at *8 (S.D.N.Y. Feb. 26, 2008) ("Courts have routinely found privity between co-employees sued in separate suits over allegedly tortious acts that occurred during the course of their employment."); *Amadasu v. Bronx Lebanon Hosp. Ctr.*, No. 03-CV-6450, 2005 WL 121746, at *8 (S.D.N.Y. Jan. 21, 2005) (finding privity among employees, hospital, and closely affiliated institute); *see also Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 329-30 (S.D.N.Y. 2008) (collecting cases).

In opposition to the instant Motion, Plaintiff argues that he did not discover the extent of Defendant's alleged wrongdoing – such as her alleged involvement in secretly drafting the Sullivan Letter – until discovery materials were turned over in *Clark I*, which occurred after Plaintiff had already filed the final Amended Complaint in that case.  (*See* P's Opp. 6, 9.)  This argument is not persuasive.  It is true that *res judicata* does not bar claims that could not have been raised in the prior action, such as where the allegedly wrongful conduct post-dates the judgment in the earlier case.  *See Bank of N.Y. v. First Millenium, Inc.*, 607 F.3d 905, 919 (2d Cir. 2010).  But this case is not one in which new allegedly wrongful conduct occurred after judgment.  Rather, it allegedly occurred in the midst of the litigation – in which case the plaintiff has a choice of either filing a supplemental complaint under Rule 15(d) or litigating the later conduct in a second suit not barred by *res judicata*.  *See Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997).  Here, Plaintiff chose to file a supplemental complaint in *Clark I* adding allegations regarding the 2009 Hearing.  Once Plaintiff had initiated litigation over the alleged wrongdoing in connection with the 2009 Hearing, he was required to bring all his allegations against related defendants together.  "[L]itigating an issue 'piecemeal' is barred by the doctrine of *res judicata*."  *Duane Reade*, 600 F.3d at 199.  No new conduct occurred after the August 9, 2010 filing of that proposed amended pleading in *Clark I*, let alone after the August 3, 2011 filing of the actual final Amended Complaint in that case; rather, according to Plaintiff, he merely *learned of* an additional instance of Defendant's alleged involvement in the same earlier conduct of which he complained in that pleading.  *See L-Tec Elecs. Corp. v. Cougar Elec. Org.*, 198 F.3d 85, 88 (2d Cir. 1999) (*per curiam*) (*res judicata* applies where "facts and events themselves arose prior to" filing of previous complaint and only Plaintiff's "awareness of these facts came later").

Plaintiff argues that the unapparent nature of Defendant's alleged wrongdoing brings this case within the fraudulent concealment exception to *res judicata*.  (*See id.* at 11-14.)  As a general rule, newly discovered evidence does not prevent preclusion on *res judicata* grounds unless the evidence was either fraudulently concealed or could not have been discovered with due diligence.  *In re Adelphia Recovery Trust*, 634 F.3d 678, 695 (2d Cir. 2011); *Saud v. Bank of N.Y.*, 929 F.2d 916, 920 (2d Cir. 1991); *accord Saabirah El v. City of N.Y.*, 300 F. App'x 103, 105 (2d Cir. 2008) (summary order).  The exception does not apply where "[n]o showing has been made that the [ ] defendants *actively concealed*" evidence of the relevant facts or where a plaintiff "could have ascertained this information through due diligence, including . . . discovery upon the original complaint."  *L-Tec Elecs. Corp.*, 198 F.3d at 88 (emphasis added).[13]

The only new information Plaintiff obtained since the filing of the final Amended Complaint in *Clark I* seems to relate to the ghostwriting of the Sullivan Letter.  Plaintiff learned of this, at the latest, at Ms. Sullivan's deposition in *Clark I* on August 9, 2011, and he also received related documents while *Clark I* was still pending.  Thus, not only has there been no showing of active concealment by Defendant of her involvement in the events litigated in *Clark I*, but Plaintiff *did* in fact learn of that involvement in discovery in the course of that prior litigation.  "Plaintiff's discovery of additional facts following the entry of . . . judgment does not block the application of *res judicata*," *id.*, so such discovery before the entry of judgment is an even less justifiable argument for avoiding the doctrine where, as here, there was no active concealment.  Furthermore, given the allegations of wrongdoing by Ms. Kitt that were included in Plaintiff's Amended Complaint in *Clark I*, Plaintiff had sufficient knowledge of Defendant's conduct to justify including her as a defendant in the prior case even without the evidence that

---

[13] The logic of this rule is obvious.  Were it otherwise, the finality of judgments would be routinely undermined, because plaintiffs commonly learn of more facts during discovery than they knew when they filed their complaints.

later came to light shortly thereafter (in Ms. Sullivan's deposition and the related document discovery) showing she may have drafted the Sullivan Letter.  *See Saud*, 929 F.2d at 920-21 (declining to reach fraudulent concealment issue because "even without the alleged newly discovered evidence, Saud had sufficient notice at the time of [the prior action] of the essential facts that are now alleged in support of his [current] complaint" to justify application of *res judicata*).[14]  Accordingly, the fraudulent concealment exception to *res judicata* does not apply in this case.  Plaintiff has already litigated this matter to a final judgment, and *res judicata* bars him from making a second attempt.  The Amended Complaint must be dismissed.

### C.  <u>Failure to State a Claim</u>

Even if the Amended Complaint were not barred by *res judicata*, it fails to plausibly state an actionable due process or equal protection claim for substantially the reasons set forth by the District Court in *Clark I*, 2011 WL 4901330, at *7-11.  To the extent not discussed below, I incorporate that Court's reasoning herein.

### 1.  <u>Due Process</u>

As a general rule, disability benefits under section 207-c constitute a protected property interest, and a recipient is therefore entitled to notice and an opportunity to be heard in connection with the termination of those benefits.  *See, e.g.*, *Mullen v. City of Syracuse*, No. 10-CV-1110, 2011 WL 111872, at *2-3 (N.D.N.Y. Jan. 13, 2011); *Matter of Park v. Kapica*, 8 N.Y.3d 302, 310 (2007).  Unreasonable delay in affording a post-deprivation hearing can also

---

[14] "Further, the fact that additional incidents alleged in a subsequent action would, by themselves, be insufficient to state a claim, can demonstrate that the claim in the second action is part of the same transaction as the first action." *Waldman*, 39 F. Supp. 2d at 377.  It seems plain that Defendant's ghostwriting of the Sullivan Letter would not suffice to state a claim.  Even if Defendant's intent was to force Plaintiff to have his hearing without the assistance of counsel, the fact remains that the Hearing Officer adjourned the hearing to a date at which counsel could be, and was, present.  Likewise, while Defendant may have intended to prevent Plaintiff from calling witnesses, the Hearing Officer repeatedly invited Plaintiff's counsel to call witnesses and offer exhibits.  (*See* Connell Decl. Ex. 3, (transcript of 2009 Hearing), at 6-10, 15, 35, 37, 38, 39, 40, 41, 43, 47-49, 51, 53, 69.)  It is thus difficult to fathom what harm was done by Defendant's alleged ghostwriting of the Sullivan Letter.

give rise to a constitutional violation in some circumstances.  *See, e.g.*, *Spinelli v. City of N.Y.*, 579 F.3d 160, 173-74 (2d Cir. 2009).  New York courts, however, provide a prompt procedural mechanism for reviewing decisions of state agencies under C.P.L.R. Article 78.  In such proceedings, New York state courts are empowered to issue "common law writs of certiorari to review, mandamus, and prohibition," *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996), and Article 78 proceedings can be used to mandamus a state official to "proceed expeditiously to resolve [a plaintiff's] claim" on which a decision is being unreasonably delayed or withheld, *N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 168 (2d Cir. 2001).  When individual state employees act outside the bounds of formal state procedures to intentionally deprive an individual of liberty or property without due process of law, "the Due Process Clause of the Fourteenth Amendment is not violated . . . so long as the State provides a meaningful postdeprivation remedy."  *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880 (citing *Hudson v. Palmer*, 468 U.S. 517, 531-33 (1984)).

> An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims. . . . Petitioners proceeding under Article 78 may raise claims that the agency adjudicator was biased or prejudged the outcome, . . . or that *ex parte* communications with other officials may have infected the adjudicator's ruling. . . . An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes.

*Locurto v. Safir*, 264 F.3d 154, 174-75 (2d Cir. 2001).  Accordingly, no federal cause of action for violation of the right to due process lies where a plaintiff declines to avail himself of Article 78 proceedings.  *See Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 152-53 (2d Cir. 2010) ("The fact that a state proceeding is required by due process does not mean that Section 1983 provides a remedy for every error committed in the state proceeding.  So long as state appellate remedies are available, a Section 1983 action is not an available vehicle for

relief."); *N.Y. State Nat'l Org. for Women*, 261 F.3d at 167-69 (Article 78 proceedings provide

"all of the process [Plaintiffs] are due under the Fourteenth Amendment"); *Claudio v. Mattituck-*

*Cutchogue Union Free Sch. Dist.*, 955 F. Supp. 2d 118, 128-29 (E.D.N.Y. 2013) ("[P]laintiff

never brought an Article 78 proceeding in state court and did not set forth any basis for

concluding that this available state remedy was inadequate.  Where, as here, the plaintiff had

available adequate process, he cannot be said to have been deprived of due process simply

because he failed to avail himself of the opportunity.") (internal quotation marks and alterations

omitted).

      Plaintiff in this case did not bring an Article 78 proceeding to challenge either the

Retirement System's delay in affording him a hearing, or to challenge the final decision of the

Hearing Officer rendered at the close of the 2009 Hearing.  Both of those alleged

unconstitutional deprivations (which were allegedly due to Defendant's conduct) could have

been addressed in such a proceeding, but Plaintiff declined to avail himself of the adequate

procedural protections in place.  Plaintiff's arguments as to why an Article 78 proceeding was

unnecessary are not convincing, as explained by the District Court in *Clark I*.  *See* 2011 WL

4901330, at *11.  The Amended Complaint fails to state a claim for violation of Plaintiff's

federal right to due process of law.

      2.  <u>Equal Protection</u>

      Plaintiff alleges that he was unconstitutionally treated differently than all other members

of the Retirement System.  Such a "class of one" claim exists "where the plaintiff alleges that

[he] has been intentionally treated differently from others similarly situated and that there is no

rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564

(2000).  In the Second Circuit, to show a class of one claim, a plaintiff must establish (among

other things) that "no rational person could regard the circumstances of the plaintiff to differ

from those of a comparator to a degree that would justify the differential treatment on the basis

of a legitimate government policy." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140

(2d Cir. 2010). "'Class-of-one plaintiffs must show an extremely high degree of similarity

between themselves and the persons to whom they compare themselves.'" *Ruston v. Town Bd.*,

610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir.

2006)) (alteration omitted). Here, there are insufficient facts pleaded in the Amended Complaint

to demonstrate the requisite degree of similarity to any comparators. The Amended Complaint

only refers to other Retirement System members in a general and conclusory fashion, (*see* AC ¶¶

43, 48, 50-53), but fails to even name one comparator or specify, for example, the amount of

time that typically passes before a post-deprivation hearing is afforded members in cases similar

to Plaintiff's. *See Green v. McLaughlin*, 480 F. App'x 44, 47-48 (2d Cir. 2012) (summary order)

(referring to broad categories, such as "other inmates with acute medical problems," is

insufficient to show required extremely high degree of similarity for class of one claim).

Plaintiff argues that I should take judicial notice of the entire public database of Retirement

System Hearing Officer decisions, and use those thousands of cases as the comparators. (P's

Opp. 22.) Surely counsel realizes that asking this Court to do counsel's legwork by sorting

through hundreds or thousands of written decisions is inappropriate, and an otherwise defective

complaint cannot be salvaged by incorporating by reference the entire database of prior

Retirement System decisions. The Amended Complaint fails to plausibly allege a violation of

Plaintiff's equal protection rights.

**D. <u>Leave to Amend</u>**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy*, 482 F.3d at 200.  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In this case, a pre-motion conference was held at which Plaintiff was fully informed of Defendant's arguments regarding defects in Plaintiff's Complaint.  Plaintiff was given an opportunity to amend his complaint in response to those arguments.  Plaintiff's failure to fix the deficiencies in his previous pleading, after being provided full notice of the deficiencies, is alone sufficient ground to deny leave to amend *sua sponte*.  *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *see also Ruotolo*, 514 F.3d at 191 (affirming denial of leave to amend "given the previous opportunities to amend").  Plaintiff also had a full and fair opportunity to

litigate the instant claims in *Clark I*.  Plaintiff has not requested permission to file a Second

Amended Complaint, nor has he given any indication that he is in possession of facts that would

cure the problems identified in this opinion.  A plaintiff need not be given leave to amend if he

fails to specify how amendment would cure the pleading deficiencies in his complaint.  *See*

*TechnoMarine SA v. Giftports, Inc.*, No. 12-4174-cv, 2014 WL 3408570, at *9 (2d Cir. July 15,

2014).  Finally, almost all of the problems with Plaintiff's Amended Complaint are "substantive;

better pleading will not cure [them]."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Accordingly, I decline to grant Plaintiff leave to amend *sua sponte*.

## V.  CONCLUSION

For the reasons stated above, Defendant's Motion is GRANTED, and the First Amended

Complaint is DISMISSED.  The Clerk of Court is respectfully directed to terminate the pending

Motion, (Doc. 12), and close the case.

**SO ORDERED.**

Dated: August 15, 2014
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.